UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE ALEXANDER GOMEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>GREEN LEWIS, et al.,<br><br>    Defendants. | Case No. 12-cv-02338-JD<br><br>**ORDER RE PETITION FOR HABEAS CORPUS**<br><br>Re: Dkt. Nos. 1, 28 |

Petitioner Jorge Gomez, a California prisoner, filed a pro se petition for a writ of habeas corpus, claiming that section 2933.6(a) of the California Penal Code, as amended, violates the Ex Post Facto Clause of the Constitution and the terms of his plea agreement. Following a full round of briefing, the Court appointed counsel for Gomez, and requested supplemental briefing from both parties. After carefully considering the petition and briefing, the Court orders an evidentiary hearing on Gomez's plea agreement claim and denies the ex post facto claim.

**BACKGROUND**

California Senate Bill X3-18 took effect on January 25, 2010, making a number of changes to California's incarceration and parole policies. One of its effects was to deny inmates who are housed in a Security Housing Unit ("SHU") and who are validated gang affiliates the ability to earn conduct credits to reduce their term of incarceration, which it did by adding the italicized language below to section 2933.6 of the California Penal Code:

> Notwithstanding any other law, a person who is placed in a Security Housing Unit, Psychiatric Services Unit, Behavioral Management Unit, or an Administrative Segregation Unit for misconduct described in subdivision (b) *or upon validation as a prison gang member or associate* is ineligible to earn credits pursuant to Section 2933 or 2933.05 during the time he or she is in the Security Housing Unit, Psychiatric Services Unit, Behavioral Management Unit, or the Administrative Segregation Unit for that misconduct.

Cal. Penal Code § 2933.6(a) (emphasis added). Section 2933 allows inmates to earn worktime credits based on the amount of time they have been continuously incarcerated, and section 2933.05 allows them to earn program credits for participation in work or educational activities; the general term "conduct credits" covers both types. Before the change to section 2933.6(a), "it was apparently possible for validated prison gang members placed in [a SHU] to earn conduct credits totaling one-third of their sentences." *In re Efstathiou*, 133 Cal. Rptr. 3d 34, 36 (Cal. Ct. App. 2011). It is now no longer possible for validated gang members or associates to do so.

This change affected petitioner Jorge A. Gomez, who is serving an 18-year sentence for corporal injury to a spouse in Pelican Bay State Prison in Crescent City, California, and has been in the SHU since January 31, 2009. *See* Memorandum in Support of Petition ¶ 2.1, p. 6, Dkt. No. 2; Abstract of Judgment, Dkt. No. 5-1. Gomez has been a validated associate of the Mexican Mafia prison gang since October 2008, and his classification has been reviewed and affirmed in at least four 180-day reviews since. *See* Memorandum in Support of Petition at 13; Traverse, Exs. A, B, Dkt. No. 6. He says that on February 2, 2010, his "work group category status" was changed from D1 to D2, precluding him from earning conduct credits and pushing back his release date by 13 months, from February 19, 2016, to March 5, 2017. Memorandum in Support of Petition ¶ 6.1, p. 6.

After unsuccessfully pursuing administrative remedies, Gomez filed a petition for a writ of mandate in the Superior Court of Del Norte County on August 9, 2010, and in December 2010, asked the court to construe his petition for a writ of mandate as a state habeas corpus petition. *Id.* ¶¶ 6.3, 6.6. After some procedural wrangling not germane to this order, the Superior Court granted the request to treat Gomez's petition as a habeas corpus petition in April 2011. Dkt. No. 5-5 at ECF p. 36. The petition was denied by the Superior Court on September 27, 2011, with the following opinion:

> The petition is denied on the ground that it does not state a cause of action. The first [sic] District Court of Appeal has determined that Penal Code Section 2933.6 does not violate the Ex Post Facto Clauses of the federal or state constitutions. See: <u>In re Sampson</u> (2011) 197 Cal. App.4th 1234.

*In re Jorge Gomez*, No. CVPT 10-1376 (Cal. Sup. Ct. Sept. 27, 2011), Dkt. No. 5-4. On October

11, 2011, Gomez filed a habeas corpus petition before the California Court of Appeal for the First District, which was summarily denied on October 26, 2011. Memorandum in Support of Petition ¶ 6.12; Petition to Court of Appeal, Dkt. No. 5-5; Decision of Court of Appeal, Dkt. No. 5-6. Finally, Gomez filed a habeas petition before the California Supreme Court on November 7, 2011, which was summarily denied on March 14, 2012. Memorandum in Support of Petition ¶ 6.13; Petition to California Supreme Court, Dkt. No. 5-2; Order of California Supreme Court, Dkt. No. 5-7.

On May 9, 2012, Gomez filed a federal habeas corpus petition in this court. *See* Petition, Dkt. No. 1. The petition challenges his reclassification to D2 status, and resulting ineligibility for conduct credits, on two grounds: violating the Ex Post Facto Clause of the Constitution and the terms of his plea agreement. *See* Memorandum in Support of Petition at 9-12. Respondent has admitted that Gomez exhausted his state judicial remedies as to both grounds, Answer ¶ 8, Dkt. No. 5, and that Gomez's petition is timely under 28 U.S.C. § 2244(d)(1) and not otherwise procedurally barred, *id.* ¶ 9.

**LEGAL STANDARD**

A federal court may grant a writ of habeas corpus in favor of a person in custody due to the judgment of a state court "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). If the petitioner's claim was already reviewed on the merits in state court, the federal court may grant the writ only if the state court's adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). "Under the 'unreasonable application' clause, a federal habeas court

3

may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence. "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412 (internal quotation marks omitted). Only Supreme Court holdings that "squarely address[]" the issue presented are clearly established precedent. *Wright v. Van Patten*, 552 U.S. 120, 125 (2008). "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003). The state court decision to which section 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991). "Although the Court in *Ylst* was concerned with determining whether the state court had lifted a procedural bar to a claim by reaching the merits, the doctrine that a federal habeas court reviews the last reasoned state decision has been extended beyond the context of procedural default." *Barker v. Fleming*, 423 F.3d 1085, 1092 n.3 (9th Cir. 2005) (citing *Lambert v. Blodgett*, 393 F.3d 943, 970 n.17 (9th Cir. 2004), and *Bailey v. Rae*, 339 F.3d 1107, 1112-13 (9th Cir. 2003)); *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 n.1 (2013) (noting with approval the Ninth Circuit's application of *Ylst*'s "look through" rule); *Cannedy v. Adams*, 706 F.3d 1148, 1158 (9th Cir.) (collecting out-of-circuit authorities), *as amended on denial of rehearing en banc*, 733 F.3d 794 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 1001 (2014). In Gomez's case, the last reasoned decision is from the Del Norte County Superior Court.

**DISCUSSION**

**I.    PLEA AGREEMENT CLAIM**

The Supreme Court has held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). Claims that a plea agreement was violated are therefore cognizable on habeas review. *See Buckley v. Terhune*, 441 F.3d 688, 694 (9th Cir. 2006) (en banc) (plea agreement providing for a maximum prison term of 15 years binding on sentencing court); *Davis v. Woodford*, 446 F.3d 957, 960-61 (9th Cir. 2006) (plea agreement between government and defendant agreeing to treat eight counts as a single strike binding on state sentencing court); *Brown v. Poole*, 337 F.3d 1155, 1160 (9th Cir. 2003) (prosecutor's commitment during plea colloquy that defendant would be released if she completed half her prison term without incurring disciplinary infractions binding on government).

Gomez argues that the withdrawal of his ability to earn further conduct credits is a violation of his oral plea agreement. According to Gomez, the plea agreement gave him the right to 15% conduct credits as long as he did not commit any serious rule violations and was willing to participate in the prison's work program. *See* Declaration of Jorge Gomez ¶ 7, Dkt. No. 28-3. As evidence of the terms of the agreement, he has attached to his supplemental briefing a transcript of his change of plea hearing in Los Angeles County Superior Court and California Department of Corrections chronological history ("CDCR chronology"), *see* Dkt. No. 28-1 ("Change of Plea Transcript"), a declaration from his trial counsel, Joseph C. Longo, Dkt. No. 28-2 ("Longo Decl."), and his own declaration, *see* Dkt. No. 28-3 ("Gomez Decl."), none of which was before the state courts.

**A.    Standard of Review**

As a preliminary matter, the parties disagree over whether Gomez's plea agreement claim was decided on the merits by the Del Norte County Superior Court. If it was, the Court must apply the deferential standards of review set forth in 28 U.S.C. § 2254(d), but if not, the Court reviews the claim de novo. *Taylor v. Cate*, 772 F.3d 842, 846-47 (9th Cir. 2014), *rehearing en banc granted,* 787 F.3d 1241 (9th Cir. 2015). Although respondent initially stated in his

5

1  answer to the Court's order to show cause that "the state courts did not address Gomez's plea
2  bargain claim on the merits," *see* Answer at 9:20, he now characterizes this as an "inadvertent
3  mistake" and argues that the Superior Court denied the plea agreement claim on the merits *sub*
4  *silentio*, while expressly denying Gomez's ex post facto claim.

The Superior Court decision addresses Gomez's ex post facto claim but not the plea agreement claim. In *Johnson v. Williams*, the Supreme Court held that when a state court opinion "addresses some but not all of a defendant's claims," there is a presumption that all the claims were adjudicated on the merits. 133 S. Ct. 1088, 1094-96 (2013). That presumption is "a strong one that may be rebutted only in unusual circumstances," but is nonetheless rebuttable. *Id.* at 1096. For example, "[w]hen the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked by the state court," de novo review is proper. *See id.* at 1097.

Whether the presumption that Gomez's plea agreement claim was adjudicated on the merits by the Del Norte County Superior Court is rebutted here is a close call. Gomez's petition for a writ of mandate -- which he later successfully convinced the court to treat as a habeas petition -- clearly argues that ending his eligibility for work credits violated his plea agreement, and does so separately from his Ex Post Facto Clause arguments:

> Petitioner contends that any change extention [sic] to his release date e.g., the 379 days without credit forfeiture for a serious CDCR rule infraction or abstract of judgement modificator [sic], or guilty plea agreement stipulation and modification by the Superior Court with original jurisdiction to do so violates the terms of petitioner's plea agreement in Case No. PA034329 of 18-years with 85% time to which petitioner was sentenced on 2-17-00 by the Superior Court of California County of Los Angeles.

Petition for Writ of Mandate ¶ 11, Dkt. No. 5-3. It is true that Gomez, who was unrepresented when this petition was filed, did not cite *Santobello* or other cases holding that the Constitution requires plea agreements to be enforced. But he did present a separate ground for relief, with a separate constitutional basis, in a separate numbered paragraph. Contrary to respondent's claim, there is no basis for concluding that Gomez's plea agreement claim was somehow "subsumed into" his ex post facto claim. Respondent's Supplemental Brief at 9:21-22, Dkt. No. 32. It seems

6

clear that the state court simply did not address the plea agreement claim. Under *Johnson*, consequently, this Court's review of the claim is de novo.[1]

### B. Expansion of the Record

The fact that the Court reviews the claim without deference has important implications for the evidence it can consider. When reviewing a state court under 28 U.S.C. § 2254(d)(1), a federal court is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). By contrast, when considering a claim that the state courts have not adjudicated on the merits, the Court can expand the record pursuant to Rule 7 of the Rules Governing § 2254 Cases or hold an evidentiary hearing. *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1241 (9th Cir. 2005); *Pinholster*, 131 S. Ct. at 1400-01. The decision to do either is subject to the constraints imposed by 28 U.S.C. § 2254(e)(2). *See Pinholster*, 131 S. Ct. at 1400-01; *Holland v. Jackson*, 542 U.S. 649, 652-53 (2004) (per curiam) (finding that the restrictions of § 2254(e)(2) "apply *a fortiori* when a prisoner seeks relief based on new evidence *without* an evidentiary hearing") (emphasis in original). It follows that, for the Court to consider the change of plea transcript, the CDCR chronology, and the Longo and Gomez declarations, Gomez must "either: (1) satisfy the requirements of 28 U.S.C. § 2254(e), or (2) show that he 'exercised diligence in his efforts to develop the factual basis of his claims in state court proceedings.'" *Libberton v. Ryan*, 583 F.3d 1147, 1165 (9th Cir. 2009) (quoting *Cooper-Smith*, 397 F.3d at 1241).

It is under the latter criterion that Gomez seeks to introduce his new evidence. Respondent argues that Gomez could easily have attached the documents he wants this Court to consider to his

---

[1] Respondent also appears to suggest that the California Supreme Court's summary denial of the habeas petition Gomez filed with that court was an adjudication on the merits, citing the Supreme Court's decision in *Harrington v. Richter*, 562 U.S. 86 (2011) and *Cannedy*, 706 F.3d at 1158. Respondent's Supplemental Brief at 8:24-9:11. Respondent's quote from *Cannedy*, however, does not appear in that decision. *Cannedy* in fact distinguishes *Richter*, holding that it applies only to summary denials where there is "*no* reasoned decision by a lower court" and therefore "no reasoned decision at all." *Cannedy*, 706 F.3d at 1158. By contrast, it held that when there *is* a reasoned lower court decision, "*Richter* does not change our practice of 'looking through' summary denials to the last reasoned decision." *Id.* at 1159. Here, the Superior Court's decision may not have given a reasoned explanation for denying Gomez's plea agreement claim, but it was unquestionably a reasoned decision -- that is, a non-summary denial. The proper procedure is to consider the Superior Court decision.

7

California habeas petitions. But the Ninth Circuit has held that doing so is not necessary to show diligence. In an extended footnote in *Horton v. Mayle*, it held that "[u]nder California law, an appellate court, when presented with a state habeas petition, determines whether an evidentiary hearing is warranted only after the parties file formal pleadings, if they are ordered to do so." *See Horton v. Mayle*, 408 F.3d 570, 582 n.6 (9th Cir. 2004). If the court denies the habeas petition without ordering formal pleadings, there is no failure of diligence for failing to attach additional evidence or request an evidentiary hearing. *See id.* Although respondent argues that *Horton* misinterpreted the California state court decisions it cited, it is binding on this Court. Each of Gomez's state habeas petitions was denied without an order to show cause, so under *Horton*, his failure to attach the documents he wants this Court to consider to his petition does not defeat his showing of diligence.

The Court therefore expands the record to include the Change of Plea Transcript, the CDCR chronology, and the declarations of Longo and Gomez.

### C. Terms of Plea Agreement

Even with the help of these newly-submitted documents, the fact that Gomez's plea agreement was oral means that figuring out its precise terms is no easy task. It clearly contained some provision for 15% conduct credits, but the precise terms and conditions for that are not readily apparent. Was Gomez simply guaranteed access to some means of earning up to 15% credits? Or was he given an affirmative assurance that he would get 15% credits unless he engaged in misconduct? If the latter, what types of misconduct?

In his declaration, Longo states that his "custom and standard practice" in a case like Gomez's was to seek a plea to a count that would allow his client to receive 50% "conduct credits," by which he means time credits that the inmate would receive for participating in work, training, or education programming "while also remaining free of serious rule infractions/violations." Longo Decl. ¶ 4. He says, however, that the prosecutor in Gomez's case, Carolyn McNary, was unwilling to accept a deal that would allow Gomez to receive 50% conduct credits. *Id.* For their part, both Gomez and Longo say in their declarations that prior to February

17, 2000, Gomez was reluctant to accept a plea bargain and was inclined to go to trial. *See* Longo Decl. ¶ 3, Gomez Decl. ¶¶ 4-5.

According to Longo, the parties reached a breakthrough on February 17, when he and McNary arrived at a deal he considered reasonable, and which he proceeded to convey to Gomez. *See* Longo Decl. ¶ 5. Gomez and Longo discussed the agreement at length, and Gomez ultimately agreed to accept it. *Id.* ¶ 6; Gomez Decl. ¶ 5. Although Longo does not describe the specific terms of the agreement he conveyed to Gomez, he does note that "[t]he issue of credits was very important to Mr. Gomez," and goes on to describe his "custom and standard practice" regarding plea agreements:

> It was . . . my custom and standard practice to tell my client that, as long as he did what the prison officials told him to do in order to get credits, and as long as he did not commit any serious rule violations/infractions while in prison, then he would receive his conduct credits. I am very confident that while discussing the issue of conduct credits with Mr. Gomez, I followed my custom and standard practice as detailed above.

Longo Decl. ¶ 6. Gomez has a more specific recollection of the conduct credit term of his plea agreement:

> For me, the most important parts of my plea agreement were the 18-year sentence, with the further 15 percent conduct credits I would receive, and the fact that the sexual abuse charges would be dismissed. . . .
>
> When I was offered an 18-year deal with 15 percent conduct credits, I understood this to mean that while I was in prison, I would receive 15 percent conduct credits as long as I did not commit any serious rule infractions/violations and was willing to participate in the prison's work program. My understanding was based upon my prior experience with conduct credits (because I had previously served time in a California prison) and also upon the conversations I had with Mr. Longo about the specific offer in this case. . . . While I understood that I was not guaranteed to receive 15 percent conduct credit, I knew that getting the credits was within my control - by staying free of serious rule infractions/violations and by remaining willing to participate in the work program.

Gomez Decl. ¶¶ 6-7. Gomez claims that without this credit provision, he would have gone to trial. *Id.* ¶ 8.

The parties went to a change of plea hearing, where the prosecutor, McNary, conducted the plea colloquy. The transcript of the hearing includes only two references to the 15% conduct

9

credit term, neither of them crystal clear.  In the first, McNary, while explaining the terms of the plea agreement to Gomez, asks him if he understands that "because this is a violent felony, you're going to do 85% time. You will only receive 15 percent credit." Change of Plea Transcript at 10:18-20.  Later on, while sentencing Gomez, the judge allowed Gomez 126 days of pre-sentencing credits and 18 days of good time/work time credits, and noted that "this is a 15 percent credit case for conduct credits." *Id.* at 21:15-20.

### D. Interpretation of the Plea Agreement

Plea agreements are construed using ordinary rules of contract interpretation. *See Brown*, 337 F.3d at 1159.  Although oral plea agreements are "not encouraged by reviewing courts," they are enforceable. *Id.* Under California contract law, which governs the interpretation of the plea agreement, "[a] plea agreement violation claim depends upon the actual terms of the agreement, not the subjective understanding of the defendant . . . ." *In re Honesto*, 29 Cal. Rptr. 3d 653, 660 (Cal. Ct. App. 2005).  As the Ninth Circuit reads California law, construing a plea agreement involves a three-step process.  First, the Court looks to the plain meaning of the agreement's language, which controls if it is not ambiguous. *Buckley*, 441 F.3d at 695.  If it is ambiguous, "it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." *Id.* (quoting Cal. Civ. Code § 1649).  This inquiry "considers not the subjective belief of the promisor but, rather, the 'objectively reasonable' expectation of the promise." *Id.*  If ambiguity still remains, "the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." *Id.* at 695-96.

In this case, the central problem is what the language of the plea agreement was in the first place.  There is no transcript of the conversation in which McNary and Longo hammered out the terms of the plea agreement.  What Longo and Gomez recall from their subsequent discussion may be circumstantial evidence of what McNary and Longo agreed to, but it is not direct evidence, and it is obviously not unbiased.

The issue would be resolved if Gomez's account of the terms of his plea agreement could be established on the basis of what the prosecutor said at the change of plea hearing. Commitments from the prosecutor at a plea colloquy may supplement and become part of the plea.

10

*See Brown*, 337 F.3d at 1157; *Davis*, 446 F.3d at 958-59. But while McNary's statements at the hearing are consistent with Gomez's claim that he was entitled to 15% credit unless he engaged in serious misconduct, they are also consistent with his conduct credit simply being limited to 15%. Her exact words were as follows:

> Ms. McNary: Okay. Also, because this is a violent felony, you're going to do 85 percent time. You will only receive 15 percent credit. Do you understand that?

Change of Plea Transcript at 10:17-21. This statement could simply mean that Gomez had no possibility of doing less than 85% time, a reading bolstered by the use of the word "only." Moreover, as Gomez himself points out, the fact that McNary said he was going to do 85% time "because this is a violent felony" could fairly be read as a reference to California Penal Code § 2933.1, which at the time of the sentencing stated that "[n]otwithstanding any other law, any person who is convicted of a felony offense listed in Section 667.5 shall accrue no more than 15 percent of worktime credit, as defined in Section 2933." The language of § 2933.1 further indicates that McNary may have been trying to say that 15% was an upper limit on the amount of conduct credit Gomez was entitled to, not an entitlement. If that indeed reflected the terms of Gomez's plea agreement, there would be no bar to later limiting Gomez's ability to earn conduct credits through statute.

Respondent argues that even if Gomez is right about the terms of his plea agreement, his reclassification to D2 status is not inconsistent with what the government promised him. According to respondent, in-prison gang affiliation constitutes serious misconduct, which Gomez acknowledges as a legitimate basis for withdrawing his eligibility to earn credits. Gomez Decl. ¶ 7. It is certainly true that validation as a gang member or associate is recognized as misconduct, *see* Cal. Code Regs. tit. 15, § 3023(a) (2012) ("Inmates and parolees shall not knowingly promote, further or assist any gang as defined in section 3000.") (current version at Cal. Code Regs. tit. 15, § 3023(c)) (amended Oct. 17, 2014). But serious misconduct is a term of art, and the offenses classified as "serious" are listed in Code Regs. tit. 15, § 3315 (2014). Validated gang affiliation is not one of them.

11

1    Gomez's right to relief turns on whether his plea agreement did, in fact, guarantee him
2    15% conduct credit as long as he participated in work or educational activities and did not engage
3    in serious misconduct.  As it stands, the evidence in the record is ambiguous.  Consequently, the
4    Court orders an evidentiary hearing to determine the terms and conditions of the 15% conduct
5    credit provision in Gomez's plea agreement.  While the parties are free to offer any evidence they
6    believe to be probative, the Court would find helpful evidence of generally-accepted practices for
7    conduct credit terms in Los Angeles Superior Court during the relevant time periods, including
8    any other plea agreements consistent with each party's positions on Gomez's agreement.

## II.    EX POST FACTO CLAIM

Gomez also argues that the application of section 2933.6 of the California Penal Code to him violates the Ex Post Facto Clause by withdrawing conduct credits and effectively increasing his punishment, after the fact, for his original offense.  It is true that the Supreme Court has twice held that postconviction changes to a prison credit scheme can raise ex post facto issues.  *See Weaver v. Graham*, 450 U.S. 24, 27-28 (1981); *Lynce v. Mathis*, 519 U.S. 433, 441-447 (1997).  But whether section 2933.6 of the California Penal Code in fact violates the Ex Post Facto clause is not the determinative issue in this case; the issue is whether the Del Norte County Superior Court's conclusion that it does not is an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States.

As Gomez acknowledges, between the time of Gomez's habeas petition and the current order, the Ninth Circuit has answered that question in the negative.  Last year, it concluded that section 2933.6's scheme is distinguishable from the ones struck down in *Weaver* and *Lynce* because it is only triggered by ongoing misconduct (continued gang affiliation) and only applies prospectively to credits that the inmate might have earned in the future without eliminating previously-earned credits.  *See Nevarez v. Barnes*, 749 F.3d 1124, 1128-29 (9th Cir. 2014).  That decision is binding on this Court, and Gomez does not argue otherwise.  While he argues in supplemental briefing that *Nevarez* was wrongly decided, he does so only to preserve the argument.  Whether his argument carries the day is an issue for an en banc sitting of the Ninth Circuit or the Supreme Court.  This Court must apply *Nevarez* and deny Gomez's claim.

Gomez also separately argues that habeas relief should be granted on his ex post facto claim in light of the Supreme Court's decision in *Vartelas v. Holder*, 132 S. Ct. 1479 (2012). In that case, the petitioner, a permanent resident of the United States, was convicted of a felony in 1994. *Vartelas*, 132 S. Ct. at 1483. In the years afterwards, he regularly traveled to and from Greece to visit his aging parents. *Id.* at 1485. Two years after his conviction, in 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), under which permanent residents with felony convictions like the petitioner's could be permanently removed from the United States if they returned from travel abroad. *Id.* at 1483. Although the petitioner in *Vartelas* successfully entered the United States on a number of occasions even after IIRIRA was enacted, his luck finally ran out in 2003, when an immigration official classed him as an alien seeking admission on the basis of his 1994 conviction, and removal proceedings were begun against him. *Id.* at 1485-86.

The petitioner challenged the application of IIRIRA's provisions restricting the reentry of permanent resident felons based on the antiretroactivity principle -- the rule that "courts read laws as prospective in application unless Congress has unambiguously instructed retroactivity." *Id.* at 1486. Noting that neither statutory law nor his sentence blocked his travel abroad at the time of his conviction, the Supreme Court held that applying IIRIRA to the petitioner's case would violate the antiretroactivity principle by heaping additional punishments on misconduct the petitioner had committed prior to IIRIRA's passage. *Id.* at 1487. Instead, IIRIRA should be read to only restrict travel based on felonies committed after its passage. In so holding, the Court rejected the government's argument that IIRIRA did not raise antiretroactivity issues because it only prospectively punished the petitioner's foreign travel, instead of retrospectively punishing his felony. *Id.* at 1488-90.

Gomez argues that the amended California Penal Code § 2933.6, like IIRIRA as interpreted by the Supreme Court in *Vartelas*, operates retroactively to punish his original felony rather than prospectively to punish his continuing gang affiliation, and that that retroactive application is unconstitutional. This is not persuasive. The reason the Supreme Court rejected the argument that IIRIRA was prospectively punishing the *Vartelas* petitioner's reentry into the

13

1  United States was that his foreign travel was "lawful" and "innocent." *Id*. The only potential
2  misconduct that the law could have been punishing, therefore, was "his conviction, pre-IIRIRA, of
3  an offense qualifying as one of moral turpitude." *Id.* Here, by contrast, amended California Penal
4  Code § 2933.6 targets continued affiliation with a gang, which is hardly as benign as traveling
5  abroad and reentering the United States. *See* Cal. Code Regs. tit. 15, § 3023(b) (2012) ("Gangs, as
6  defined in section 3000, present a serious threat to the safety and security of California prisons.").
7  Penal Code § 2933.6 is more akin to statutes that the *Vartelas* court distinguished as having
8  prospective effect, like 18 U.S.C. §922(g)'s prohibition against the possession of firearms by
9  convicted felons, "laws prohibiting persons convicted of a sex crime against a victim under 16
10 years of age from working in jobs involving frequent contact with minors, and laws prohibiting a
11 person 'who has been adjudicated as a mental defective or who has been committed to a mental
12 institution' from possessing guns." *Id.* at 1489 & n.7.[2]

13 In any event, it would be incongruous to hold that the Superior Court made a decision
14 "contrary to" *Vartelas* in rejecting petitioner's ex post facto claim, since *Vartelas* is bereft of
15 holdings concerning the Ex Post Facto Clause. All *Vartelas* did was interpret a statute -- a
16 different statute from the one at issue here -- without deciding whether the interpretation it rejected
17 would violate the Ex Post Facto clause. As a result, *Vartelas* provides no grounds for granting the
18 petitioner habeas relief.

## CONCLUSION

20 For the reasons stated, the Court orders an evidentiary hearing on Gomez's plea agreement
21 claim. The following dates are currently available for the Court to hold an evidentiary hearing at
22 10:00 a.m.: Monday, October 5, 2015; Thursday, October 8, 2015; and Tuesday, October 13,

---

[2] Gomez's claim that "gang membership or association does *not* constitute misconduct," Petitioner's Supplemental Brief at 24:12, Dkt. No. 28, is not accurate. *See* Cal. Code Regs. tit. 15, § 3023(a) (2012) ("Inmates and parolees shall not knowingly promote, further or assist any gang as defined in section 3000.") (current version at Cal. Code Regs. tit. 15, § 3023(c) (amended Oct. 17, 2014). California courts have recognized that "[t]here is a plain incongruity between continuing by choice to be an active member of a prison gang while incarcerated in prison (necessitating segregated housing), and continuing to earn good conduct credits." *Efstathiou*, 133 Cal. Rptr. 3d at 39. Cal. Code Regs. tit. 15, § 3315, which he cites in support, simply does not classify validated gang affiliation as "serious" misconduct.

14

2015.  The parties should meet and confer and notify the Court in writing within a week of this order as to which date they prefer.  In addition, the parties should file a joint notice a week prior to the hearing listing the witnesses they expect to call at the hearing, the anticipated subject matter of their testimony, and their estimate of the time needed for the hearing.

**IT IS SO ORDERED.**

Dated:  August 25, 2015

_____
JAMES DONATO
United States District Judge