UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE ALEXANDER GOMEZ,<br>　　　　Petitioner,<br>　v.<br>SUZANNE M. PEERY,<br>　　　　Respondent. | Case No. 3:12-cv-02338-JD<br><br>**ORDER GRANTING PETITION FOR HABEAS CORPUS**<br>Re: Dkt. No. 1 |

## BACKGROUND

This order is the Court's third and final order on the habeas corpus petition filed by Jorge Alexander Gomez ("Gomez"). Dkt. No. 1. The prior orders provide the details on the case, which will not be repeated here. Dkt. Nos. 34, 42. In summary, Gomez has been serving time in California penitentiaries on an 18-year sentence imposed under a plea agreement he entered into in 2000. In the petition, Gomez alleged that 2010 amendments to California Penal Code Section 2933.6 denied him the ability to reduce his sentence by up to 15% for good conduct credits and thereby violated the Ex Post Facto clause of the Constitution and the terms of his plea agreement. Dkt. No. 2 at 9-15. In the August 25, 2015 order, the Court denied the ex post facto claim under controlling Ninth Circuit precedent, Dkt. No. 34 at 1, 12-14, but found that Gomez's plea agreement was ambiguous, and ordered an evidentiary hearing, Dkt. No. 34. at 12. On December 3, 2015, the Court vacated the evidentiary hearing after both parties expressed their desire to submit the plea agreement claim for decision on the papers. Dkt. No. at 42 at 2. On December 23, 2015, at the Court's invitation, Gomez supplemented the record with declarations from two criminal defense attorneys who practiced in the Los Angeles Superior Court at the time of Gomez's sentencing, Dkt. No. 43, and on January 5, 2016, the state filed its objections to the

declarations, Dkt. No. 44.

While these procedural events were happening, the law affecting the petition changed. After the Court denied the ex post facto claim, the Ninth Circuit held that the "[a]mended § 2933.6 violates the Ex Post Facto Clause as applied to prisoners, like [Gomez], who committed their underlying criminal conduct before the amendment's enactment." *Hinojosa v. Davey*, 803 F.3d 412, 425 (9th Cir. 2015).

This is a significant development in governing law that affects the outcome here. *Hinojosa* does not change the Court's earlier denial of Gomez's ex post facto claim based on *Nevarez v. Barnes*, 749 F.3d 1124 (9th Cir. 2014). *See* Dkt. No. 34 at 12. Unlike in *Hinojosa*, the state court adjudicated Gomez's ex post facto claim on its merits and so the Court was required to conduct a deferential review of the state court's decision under 28 U.S.C. § 2254(d). *Hinojosa*, 803 F.3d at 418 ("If AEDPA applies here, we are bound by our decision in *Nevarez* and must affirm the district court's denial of Hinojosa's petition.").

But *Hinojosa* raises a new question, namely whether Gomez's plea agreement should be read to incorporate a law that has been found to be ex post facto. Under the rules governing the interpretation of plea agreements, the Court finds it cannot.

## DISCUSSION

In California, it is well established that "[a] negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles." *People v. Shelton*, 37 Cal. 4th 759, 767 (2006) (citation omitted). When interpreting a contact, "[a] court must first look to the plain meaning of the agreement's language." *Buckley v. Terhune*, 441 F.3d 688, 695 (9th Cir. 2006) (citing Cal. Civ. Code §§ 1638, 1644). In a prior order, the Court held that the language of Gomez's oral plea agreement, as reflected in the change of plea transcript, was ambiguous, because the prosecutor's statements about the limitations on Gomez's ability to earn conduct credit could be read in two different ways. Dkt. No. 34 at 10-12. Specifically, the Court found that the prosecutor's statements could be understood as either setting 15% as the upper limit on the amount of conduct credit Gomez was eligible to earn, or as promising 15% conduct credit, as long as he did not engage in serious misconduct and participated in work programs. *Id.* at 11. This

2

1   finding led to the filing of the supplemental declarations and other materials currently before the
2   Court.

3   None of the new materials brings particular clarity to the situation. Neither side has found a written plea agreement and the record consists mainly of the change of plea transcript and declarations submitted by defense attorneys about general practices and procedures. Consequently, ambiguity remains and the Court must look to what "the objectively reasonable expectations" of the promisee were. *Buckley*, 441 F.3d at 695, 698. The default rule in California is that "a plea agreement is deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy." *Doe v. Harris*, 57 Cal. 4th 64, 73 (2013) (internal quotation marks and citation omitted). Under this rule, Gomez would lose. Without evidence that the parties "affirmatively agree[d] or implicitly underst[oo]d the consequences of a plea w[ould] remain fixed," the Court would be compelled to reject Gomez's claim that he believed his ability to earn 15% conduct credit would *always* remain "within [his] control," regardless of future changes in the law. *Doe v. Harris*, 535 F. App'x 630, 631-32 (9th Cir. 2013); Dkt. No. 28 Ex. C ¶ 7.

But the Court need not determine the exact scope of the parties' agreement about Gomez's ability to earn the conduct credit or to what extent they agreed that the eligibility criteria for earning the conduct credit would stay fixed. In light of the Ninth Circuit's holding that the amended Section 2933.6 is unconstitutional, the Court need only decide whether it was objectively reasonable for Gomez to expect that his ability to earn the 15% conduct credit would be affected by an enactment of an unconstitutional ex post facto law.

While that question clearly suggests an obvious answer, the record definitively shows that the plea agreement did not contemplate changes attributable to an unconstitutional law. Attorney Joseph Longo negotiated Gomez's plea agreement and attests that "the 15 percent conduct credits term was a significant inducement of Mr. Gomez's decision to accept the prosecutor's proposed plea agreement and plead no contest in his case." Dkt. No. 28 Ex. B ¶ 8. For 15% conduct credit to be an inducement at all, parties must have expected, at the very least, that his ability to earn the credit would not be undermined by an unconstitutional piece of legislation. The additional

United States District Court
Northern District of California

3

declarations of the Joel C. Koury and Jerome J. Haig further support that it was not customary to "discuss the possibility of changes to the laws governing conduct credits" because "any negative changes would presumably not apply . . . in light of the constitutional protection against Ex Post Facto laws." Dkt. No. 43 Ex. A ¶ 13; *see also* Dkt. No. 43 Ex. C ¶ 13. The state also admits that the prosecutor's credit-earning statement was silent on the effect of future legislative changes. Dkt. No. 44 at 3. Because it would be an absurd result to construe this silence to mean that Gomez implicitly agreed to forgo his constitutional protection against ex post facto laws, the Court holds that by applying the amended Section 2933.6 to Gomez, the state breached his plea agreement.

Where a plea agreement has been breached, there are two available remedies: withdrawal of his plea and specific performance. *Buckley*, 441 F.3d at 699. In Gomez's case, specific performance appears to be the only proper remedy because Gomez has already fulfilled his obligations by being incarcerated beyond his scheduled release date of February 19, 2016.[1] *Id.* Consequently, Gomez is entitled to 15% conduct credit as long as he has continued to participate in work programs and not engage in serious misconduct, and is ordered to be released immediately.

Due to the distinction between the standards of review that the Ninth Circuit was applying in *Nevarez* and *Hinojosa*, the Court finds itself in a unique position of denying Gomez's ex post facto claim and yet finding that his plea agreement was violated by the application of an ex post facto law. To hold otherwise, however, would yield the indefensible result that an ambiguous plea agreement, by its silence, is interpreted to incorporate future unconstitutional ex post facto laws. Without speculating how the Court would have resolved the ambiguity in Gomez's plea agreement absent the *Hinojosa* decision, the Court holds that to the extent that the amended Section 2933.6 is ex post facto, its application to Gomez breached his plea agreement.

---

[1] There seems to be some confusion about Gomez's scheduled release date if he were to receive the 15% conduct credit. In Gomez's original memorandum of points and authorities, he said it was February 19, 2016. Dkt. No. 2 at 6. However, his counsel said the scheduled date was February 9, 2016 in the supplemental brief, Dkt. No. 28 at 16, and the state did not challenge this representation in its opposition brief, Dkt. No. 32, at 24. The Court finds that the correct date is February 19, 2016 as stated in Gomez's original memorandum, but because both dates have passed, Gomez is entitled to specific performance regardless of what the correct date is.

# CONCLUSION

The petition is GRANTED.  The State of California and the California Department of Corrections and Rehabilitation are ordered to release Gomez from custody forthwith.

**IT IS SO ORDERED.**

Dated: February 27, 2016

JAMES DONATO
United States District Judge